THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TINA PETTIT,<br><br>                Plaintiff,<br><br>     v.<br><br>THE BOEING COMPANY,<br><br>                Defendant. | CASE NO. C10-1262-JCC<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 15), Plaintiff's Response (Dkt. No. 25), and Defendant's Reply (Dkt. No. 32). Having thoroughly considered the parties' briefing and the relevant record, the Court grants the motion for the reasons explained herein.

**I.    BACKGROUND**

This case involves a claim of wrongful termination. Plaintiff worked off and on for Boeing for approximately 13 years between 1988 and 2008. At the time of her discharge, she was a Quality Inspector at Boeing's Renton facility. Her duties were to inspect and approve mechanical work performed on wings. (Dkt. No. 15 at 3.)

The incident that gave rise to Plaintiff's termination was a verbal altercation between Plaintiff and Princie Stewart, an African-American coworker. On November 12, 2008, Plaintiff returned from lunch to find a note from Stewart on her desk that read, "Tina come meet me in

Patty Millers area or call [my phone]. Princie." Plaintiff saw the note, became upset, and said loud enough for others to hear, "This is bullshit. Why is she leaving me notes?" (Dkt. No. 25 at 4.) When Stewart came to see if Plaintiff received the note, Plaintiff responded "yes, I got your note," and the two women began yelling over each other. Stewart and nearby witnesses reported that Plaintiff started yelling at Stewart, "Fuck, I'm tired of this," said "fuck" multiple times, and asked, "Why are you leaving me [f]ucking notes like this? Why the [f]uck don't you just come find me and tell me what you need?" (Dkt. No. 15 at 6–7.) Plaintiff denies using profanity in the argument. (Dkt. No. 25 at 4.)

Stewart contacted her supervisor Tim Whitehouse about the incident, and he advised that she report it to Human Resources. (Dkt. No. 26 at 8.) Human Resources investigated the incident and gathered statements from Plaintiff and Angela Vaughn, a co-worker. (Dkt. No. 15 at 7.) One week later, Plaintiff contacted Vaughn and stated that she had not said anything to HR about the cursing, asked if Vaughn had said anything about the cursing, and admitted she "would get into a lot of trouble" if HR was told she had been cursing. *Id*. After gathering witness statements, Human Resources referred the matter to Boeing's Employee Corrective Action Review Board ("ECARB') for review. *Id*.

ECARB reviews cases of employee misconduct and issues corrective actions. It is made up of a mixture of managers, HR representatives, and representatives from Boeing's union relations and ethics departments. (Dkt. No. 21-2 at 2.) The Board does not know the race of the employees before it and uses a standardized corrective action guideline to decide what level of corrective action is appropriate. *Id*.

ECARB categorized Plaintiff's conduct as Inappropriate Language Discussion in violation of the of the company behavioral code. (Dkt. No. 15 at 7.) Plaintiff had been disciplined on two previous instances. In May 2008, ECARB disciplined Plaintiff for pulling a chair out from under a co-worker. ECARB determined she exhibited bullying behavior and issued a one-day suspension. (Dkt. No. 15 at 4.) In August 2008, she was also verbally warned

by her supervisor after co-workers complained she was ordering them around. *Id.* at 5. Because this was her second violation of the behavioral code, ECARB determined she should be dismissed. *Id*. at 8.

Plaintiff claims Boeing acted unlawfully when it terminated her employment. She claims that Princie Stewart orchestrated her dismissal because of Plaintiff's race (Native American) and color (White). *Id.* at 2. The basis for Plaintiff's claim is a comment Stewart was overheard making to co-worker after Plaintiff's termination: "See, I told you I would get rid of that fat-ass white bitch." (Dkt. No. 25 at 1.) Plaintiff contends that this statement is direct evidence of discriminatory bias and that Stewart's racial animus set in motion and influenced Boeing's decision-making process to terminate Plaintiff. *Id*. Stewart denies making the statement. (Dkt. No. 15 at 9.) Defendant contends that the statement is not direct evidence of racial bias and does not impute racial animus on Boeing because (1) it was made by a fellow union member who did not participate in the disciplinary decision and (2) Plaintiff has not identified any employee who was treated more favorably under similar circumstances. *Id.* at 2.

## II.    DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may move for summary judgment on the basis that the nonmoving party has failed to make a sufficient showing on an essential element of his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). To overcome such a motion, the nonmovant must produce evidence with respect to the essential element, identifying specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323.

A plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination by offering evidence that "give[s] rise to an inference of unlawful discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A plaintiff

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE – 3

may establish a prima facie case either by meeting the four-part test laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), or by providing direct evidence suggesting that the employment decision was based on an impermissible criterion, *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997).

### A. Pettit's Statement is not Direct Evidence.

Plaintiff argues that the Court need not apply the *McDonnell Douglas* test because she provides strong direct evidence of discriminatory animus. (Dkt. No. 25 at 11.) Direct evidence is evidence "which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir.1998) (quoting *Davis v. Chevron, U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir.1994)) (alteration in original). Plaintiff's case rests solely on Stewart's statement: "See, I told you I would get rid of that fat-ass white bitch." Standing alone, this statement is not sufficient to establish the Plaintiff's prima facie case.

Even if the Court assumes that the disputed statement by Stewart was motivated by racial bias, it is not direct evidence of discriminatory animus by The Boeing Company. Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer. *See, e.g., Godwin,* 150 F.3d at 1221 (finding a supervisor's statement that he "did not want to deal with [a] female" was direct evidence of discrimination); *Cordova,* 124 F.3d at 1149 (finding a hiring manager's comments that a co-worker was a "dumb Mexican" who had been hired because he was a member of a minority class was direct evidence of discrimination), *Warren v. City of Carlsbad,* 58 F.3d 439, 443 (9th Cir. 1995) (finding a fire chief's derogatory comments about Hispanics created an inference of discriminatory motive). Stewart was a co-worker; she did not supervise Plaintiff, did not participate in ECARB, and did not have the capacity to terminate Plaintiff. Moreover, the remarks were made after ECARB made its determination to terminate Plaintiff. A single stray remark made after the fact by a non-decision-maker cannot be interpreted to be direct evidence of discriminatory animus on the part of Boeing. *See Mondero v. Stald River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) (stray remarks

1  not acted upon or communicated to the decision maker are insufficient to establish
2  discriminatory animus); *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990)
3  (stray remarks insufficient to establish discrimination); *Stepheny v. Brooklyn Hebrew School for*
4  *Special Children*, 356 F.Supp.2d 248, 264 (E.D.N.Y 2005) (finding utterance of "white bitch" or
5  variation five times over five months insufficient to withstand summary judgment).

6        A subordinate's bias may be imputed to the employer if the plaintiff can prove that an
7  independent decision was not independent because the biased subordinate pervasively influenced
8  the decision. *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) (finding that a supervisor
9  influenced the decision of an independent board when he submitted a lengthy memo, a list of 21
10 potential witnesses, and failed to allow the plaintiff to submit similar documents). In this case,
11 there is no evidence that Stewart had a pervasive influence on the ECARB decision. The
12 investigation by Human Resources was not initiated until after the altercation between Stewart
13 and Plaintiff and it is undisputed that Stewart did not report the incident until after she was
14 instructed to do so by her white supervisor. (Dkt. No. 26 at 8.) ECARB was unaware of the race
15 or color of any of the individuals involved, including Plaintiff. In addition to the independent
16 investigation conducted by Human Resources, ECARB had before it the statements of Stewart,
17 Plaintiff, and a white, disinterested co-worker. (Dkt. No. 21-2 at 2.) Even if the Court were to
18 assume that Stewart had a biased motivation for making the complaint, there is no evidence to
19 show that that bias influenced Boeing's decision to terminate Plaintiff. Without direct evidence
20 that Plaintiff's termination was based on racial animus, the Plaintiff has failed to establish the
21 prima facie case for disparate treatment under Title VII.

22        **B.  No Pretext for Discrimination.**

23        Finally, even if the Court assumes that the statement was sufficient to establish a prima
24 facie case, Boeing has fulfilled its burden by articulating a legitimate, nondiscriminatory reason
25 for terminating Plaintiff. To survive summary judgment, Plaintiff must show that the articulated
26 reason is pretextual "by showing that the employer's proffered explanation is unworthy of

credence." *Burdine*, 450 U.S. at 256. In this case, Plaintiff must produce specific evidence that Boeing's stated reason for dismissal is unworthy of belief. *Raytheon Company v. Hernandez*, 540 U.S. 44, 51–52 (2003).

Plaintiff contends her dismissal was a pretext for discrimination because other Boeing factory employees use profanity and are not disciplined or discharged for it. She cites statements of factory workers who have heard profanity on the factory floor. (Dkt. No. 25 at 18.) However, Plaintiff's statements make no distinction about the type, use, and circumstances of the profanity used on the factory floor. While dismissal for the use of profanity is potentially a discriminatory pretext, *Dash v. NLRB*, 793 F.2d 1062, 1068–69 (9th Cir. 1986), in this instance Plaintiff's conduct went beyond an exclamatory utterance to an outburst of anger and profanity that was directed at a co-worker. Moreover, Defendant provides evidence that between July 2007 and March 2009, Boeing dismissed 12 employees for similar violations, eight were White, three were Black, and one was Hispanic (Dkt. No. 15 at 20), which weighs against a finding of any pretext in terminating Plaintiff. *Snead v. Met. Prop & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001) (holding that lack of evidence that similarly situated employees were treated differently weighs against a finding of pretext).

In summary, Plaintiff has not established a prima facie case for discrimination. She admitted to engaging in the conduct that resulted in her dismissal, she does not dispute Defendant's assertion that its decision was based in substantial part on the statement of Angela Vaughn, a white, disinterested witness, and she has not identified any individual whom Boeing treated differently in similar circumstances. Because Plaintiff has failed to make a sufficient showing on the essential elements of the prima facie case and pretext, the Court grants Defendant's motion for summary judgment.

//

//

1  **III.    CONCLUSION**

2   For the foregoing reasons, Defendant's motion for Summary Judgment (Dkt. No. 15) is

3  GRANTED. The Clerk to the DISMISS this action with prejudice.

4   DATED this 12th day of October 2011.

5

6

7

8

9

10    _____

11    John C. Coughenour
     UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26