THE HONORABLE JOHN C. COUGHENOUR

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   TINA PETTIT,                                        CASE NO. C10-1262-JCC

10
                        Plaintiff,                      ORDER GRANTING
11                                                      DEFENDANT'S MOTION FOR
            v.                                          SUMMARY JUDGMENT
12
    THE BOEING COMPANY,
13
                        Defendant.
14

15          This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt.

16  No. 15), Plaintiff's Response (Dkt. No. 25), and Defendant's Reply (Dkt. No. 32). Having

17  thoroughly considered the parties' briefing and the relevant record, the Court grants the motion

18  for the reasons explained herein.

19  **I.      BACKGROUND**

20          This case involves a claim of wrongful termination. Plaintiff worked off and on for

21  Boeing for approximately 13 years between 1988 and 2008. At the time of her discharge, she

22  was a Quality Inspector at Boeing's Renton facility. Her duties were to inspect and approve

23  mechanical work performed on wings. (Dkt. No. 15 at 3.)

24          The incident that gave rise to Plaintiff's termination was a verbal altercation between

25  Plaintiff and Princie Stewart, an African-American coworker. On November 12, 2008, Plaintiff

26  returned from lunch to find a note from Stewart on her desk that read, "Tina come meet me in

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
PAGE – 1

Patty Millers area or call [my phone]. Princie." Plaintiff saw the note, became upset, and said

loud enough for others to hear, "This is bullshit. Why is she leaving me notes?" (Dkt. No. 25 at

4.) When Stewart came to see if Plaintiff received the note, Plaintiff responded "yes, I got your

note," and the two women began yelling over each other. Stewart and nearby witnesses reported

that Plaintiff started yelling at Stewart, "Fuck, I'm tired of this," said "fuck" multiple times, and

asked, "Why are you leaving me [f]ucking notes like this? Why the [f]uck don't you just come

find me and tell me what you need?" (Dkt. No. 15 at 6–7.) Plaintiff denies using profanity in the

argument. (Dkt. No. 25 at 4.)

Stewart contacted her supervisor Tim Whitehouse about the incident, and he advised that

she report it to Human Resources. (Dkt. No. 26 at 8.) Human Resources investigated the incident

and gathered statements from Plaintiff and Angela Vaughn, a co-worker. (Dkt. No. 15 at 7.) One

week later, Plaintiff contacted Vaughn and stated that she had not said anything to HR about the

cursing, asked if Vaughn had said anything about the cursing, and admitted she "would get into a

lot of trouble" if HR was told she had been cursing. *Id*. After gathering witness statements,

Human Resources referred the matter to Boeing's Employee Corrective Action Review Board

("ECARB') for review. *Id*.

ECARB reviews cases of employee misconduct and issues corrective actions. It is made

up of a mixture of managers, HR representatives, and representatives from Boeing's union

relations and ethics departments. (Dkt. No. 21-2 at 2.) The Board does not know the race of the

employees before it and uses a standardized corrective action guideline to decide what level of

corrective action is appropriate. *Id*.

ECARB categorized Plaintiff's conduct as Inappropriate Language Discussion in

violation of the of the company behavioral code. (Dkt. No. 15 at 7.) Plaintiff had been

disciplined on two previous instances. In May 2008, ECARB disciplined Plaintiff for pulling a

chair out from under a co-worker. ECARB determined she exhibited bullying behavior and

issued a one-day suspension. (Dkt. No. 15 at 4.) In August 2008, she was also verbally warned

1    by her supervisor after co-workers complained she was ordering them around. *Id.* at 5. Because

2    this was her second violation of the behavioral code, ECARB determined she should be

3    dismissed. *Id*. at 8.

4        Plaintiff claims Boeing acted unlawfully when it terminated her employment. She claims

5    that Princie Stewart orchestrated her dismissal because of Plaintiff's race (Native American) and

6    color (White). *Id.* at 2. The basis for Plaintiff's claim is a comment Stewart was overheard

7    making to co-worker after Plaintiff's termination: "See, I told you I would get rid of that fat-ass

8    white bitch." (Dkt. No. 25 at 1.) Plaintiff contends that this statement is direct evidence of

9    discriminatory bias and that Stewart's racial animus set in motion and influenced Boeing's

10   decision-making process to terminate Plaintiff. *Id*. Stewart denies making the statement. (Dkt.

11   No. 15 at 9.) Defendant contends that the statement is not direct evidence of racial bias and does

12   not impute racial animus on Boeing because (1) it was made by a fellow union member who did

13   not participate in the disciplinary decision and (2) Plaintiff has not identified any employee who

14   was treated more favorably under similar circumstances. *Id.* at 2.

15   **II.     DISCUSSION**

16        Summary judgment is appropriate when "there is no genuine dispute as to any material

17   fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party

18   may move for summary judgment on the basis that the nonmoving party has failed to make a

19   sufficient showing on an essential element of his or her case. *Celotex Corp. v. Catrett*, 477 U.S.

20   317, 323 (1985). To overcome such a motion, the nonmovant must produce evidence with

21   respect to the essential element, identifying specific facts showing a genuine issue for trial. *See*

22   Fed. R. Civ. P. 56(c)(1). "One of the principal purposes of the summary judgment rule is to

23   isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323.

24        A plaintiff alleging disparate treatment under Title VII must first establish a prima facie

25   case of discrimination by offering evidence that "give[s] rise to an inference of unlawful

26   discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A plaintiff

1   may establish a prima facie case either by meeting the four-part test laid out in *McDonnell*

2   *Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), or by providing direct evidence suggesting

3   that the employment decision was based on an impermissible criterion, *Cordova v. State Farm*

4   *Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997).

5         **A. Pettit's Statement is not Direct Evidence.**

6         Plaintiff argues that the Court need not apply the *McDonnell Douglas* test because she

7   provides strong direct evidence of discriminatory animus. (Dkt. No. 25 at 11.) Direct evidence is

8   evidence "which, if believed, proves the fact [of discriminatory animus] without inference or

9   presumption." *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir.1998) (quoting *Davis*

10   *v. Chevron, U.S.A., Inc.,* 14 F.3d 1082, 1085 (5th Cir.1994)) (alteration in original). Plaintiff's

11   case rests solely on Stewart's statement: "See, I told you I would get rid of that fat-ass white

12   bitch." Standing alone, this statement is not sufficient to establish the Plaintiff's prima facie case.

13         Even if the Court assumes that the disputed statement by Stewart was motivated by racial

14   bias, it is not direct evidence of discriminatory animus by The Boeing Company. Direct evidence

15   typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the

16   employer. *See, e.g., Godwin,* 150 F.3d at 1221 (finding a supervisor's statement that he "did not

17   want to deal with [a] female" was direct evidence of discrimination); *Cordova,* 124 F.3d at 1149

18   (finding a hiring manager's comments that a co-worker was a "dumb Mexican" who had been

19   hired because he was a member of a minority class was direct evidence of discrimination),

20   *Warren v. City of Carlsbad,* 58 F.3d 439, 443 (9th Cir. 1995) (finding a fire chief's derogatory

21   comments about Hispanics created an inference of discriminatory motive). Stewart was a co-

22   worker; she did not supervise Plaintiff, did not participate in ECARB, and did not have the

23   capacity to terminate Plaintiff. Moreover, the remarks were made after ECARB made its

24   determination to terminate Plaintiff. A single stray remark made after the fact by a non-decision-

25   maker cannot be interpreted to be direct evidence of discriminatory animus on the part of

26   Boeing. *See Mondero v. Stald River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) (stray remarks

not acted upon or communicated to the decision maker are insufficient to establish

discriminatory animus); *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990)

(stray remarks insufficient to establish discrimination); *Stepheny v. Brooklyn Hebrew School for*

*Special Children*, 356 F.Supp.2d 248, 264 (E.D.N.Y 2005) (finding utterance of "white bitch" or

variation five times over five months insufficient to withstand summary judgment).

A subordinate's bias may be imputed to the employer if the plaintiff can prove that an

independent decision was not independent because the biased subordinate pervasively influenced

the decision. *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) (finding that a supervisor

influenced the decision of an independent board when he submitted a lengthy memo, a list of 21

potential witnesses, and failed to allow the plaintiff to submit similar documents). In this case,

there is no evidence that Stewart had a pervasive influence on the ECARB decision. The

investigation by Human Resources was not initiated until after the altercation between Stewart

and Plaintiff and it is undisputed that Stewart did not report the incident until after she was

instructed to do so by her white supervisor. (Dkt. No. 26 at 8.) ECARB was unaware of the race

or color of any of the individuals involved, including Plaintiff. In addition to the independent

investigation conducted by Human Resources, ECARB had before it the statements of Stewart,

Plaintiff, and a white, disinterested co-worker. (Dkt. No. 21-2 at 2.) Even if the Court were to

assume that Stewart had a biased motivation for making the complaint, there is no evidence to

show that that bias influenced Boeing's decision to terminate Plaintiff. Without direct evidence

that Plaintiff's termination was based on racial animus, the Plaintiff has failed to establish the

prima facie case for disparate treatment under Title VII.

**B. No Pretext for Discrimination.**

Finally, even if the Court assumes that the statement was sufficient to establish a prima

facie case, Boeing has fulfilled its burden by articulating a legitimate, nondiscriminatory reason

for terminating Plaintiff. To survive summary judgment, Plaintiff must show that the articulated

reason is pretextual "by showing that the employer's proffered explanation is unworthy of

credence." *Burdine*, 450 U.S. at 256. In this case, Plaintiff must produce specific evidence that Boeing's stated reason for dismissal is unworthy of belief. *Raytheon Company v. Hernandez*, 540 U.S. 44, 51–52 (2003).

Plaintiff contends her dismissal was a pretext for discrimination because other Boeing factory employees use profanity and are not disciplined or discharged for it. She cites statements of factory workers who have heard profanity on the factory floor. (Dkt. No. 25 at 18.) However, Plaintiff's statements make no distinction about the type, use, and circumstances of the profanity used on the factory floor. While dismissal for the use of profanity is potentially a discriminatory pretext, *Dash v. NLRB*, 793 F.2d 1062, 1068–69 (9th Cir. 1986), in this instance Plaintiff's conduct went beyond an exclamatory utterance to an outburst of anger and profanity that was directed at a co-worker. Moreover, Defendant provides evidence that between July 2007 and March 2009, Boeing dismissed 12 employees for similar violations, eight were White, three were Black, and one was Hispanic (Dkt. No. 15 at 20), which weighs against a finding of any pretext in terminating Plaintiff. *Snead v. Met. Prop & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001) (holding that lack of evidence that similarly situated employees were treated differently weighs against a finding of pretext).

In summary, Plaintiff has not established a prima facie case for discrimination. She admitted to engaging in the conduct that resulted in her dismissal, she does not dispute Defendant's assertion that its decision was based in substantial part on the statement of Angela Vaughn, a white, disinterested witness, and she has not identified any individual whom Boeing treated differently in similar circumstances. Because Plaintiff has failed to make a sufficient showing on the essential elements of the prima facie case and pretext, the Court grants Defendant's motion for summary judgment.

//

//

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for Summary Judgment (Dkt. No. 15) is

GRANTED. The Clerk to the DISMISS this action with prejudice.

DATED this 12th day of October 2011.

John C. Coughenour
UNITED STATES DISTRICT JUDGE